IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JASON ANDREW MURPHY, # 276653, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil Action No. 1:15cv04-MHT |
| ) | (WO) |
| KENNETH JONES, *et al.*, ) | |
| ) | |
| Respondents. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter concerns a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 filed by Alabama inmate Jason Andrew Murphy ("Murphy"). Doc. No. 1.[1]

**I.   BACKGROUND**

On October 8, 2010, a Houston County jury found Murphy guilty of criminal mischief in the first degree, in violation of § 13A-7-21, Ala. Code 1975; burglary in the second degree, in violation of § 13A-7-6, Ala. Code 1975; making a terrorist threat, in violation of § 13A-10-15, Ala. Code 1975; and attempted murder, in violation of § 13A-4-2 and 13A-6-2, Ala. Code 1975. Murphy was acquitted of four additional attempted-murder counts. Murphy's convictions stemmed from an incident in which he entered a Dothan PrimeCare clinic armed with a high-powered rifle and handgun and opened fire, sending clinic staff and patients scrambling for safety. The incident ended when Murphy surrendered to police following a standoff.

On December 22, 2010, the trial court sentenced Murphy to 10 years in prison for the first-degree criminal-mischief conviction; 15 years in prison for the second-degree burglary conviction;

---

[1] Document numbers ("Doc. No.") are those assigned by the Clerk of Court in this civil action. Page references are to those assigned by CM/ECF.

10 years in prison for the making-a-terrorist-threat conviction; and 35 years in prison for the attempted-murder conviction, the sentences to be served consecutively.  *See* Doc. No. 11-23.

Murphy appealed, arguing that (1) the trial court erred by denying his request for youthful-offender status; (2) the trial court erred in denying his motion for judgment of acquittal based on the insufficiency of the evidence to sustain his convictions for attempted murder and second-degree burglary; and (3) the trial court gave erroneous jury instructions on "unlawful remaining" for purposes of the second-degree burglary conviction.  Doc. No. 11-23.

On February 10, 2012, the Alabama Court of Criminal Appeals issued an opinion overturning Murphy's attempted-murder conviction, finding there was insufficient evidence he specifically intended to kill the victim.  *Murphy v. State*, 108 So.3d 531 (Ala. Crim. App. 2012).  The Court of Criminal Appeals denied Murphy relief on his other claims and affirmed his remaining convictions and sentences.  *Id*.  Murphy applied for rehearing, which was overruled on August 24, 2012.  *See id*., 108 So.2d at 545-47; Doc. Nos. 11-26 and 11-27.  He then petitioned the Alabama Supreme Court for a writ of certiorari.  The petition for certiorari was denied on October 12, 2012, and a certificate of judgment was entered that same date.  Doc. Nos. 11-28 and 11-29.

On August 22, 2013, through counsel, Murphy filed a petition for post-conviction relief under Rule 32 of the Alabama Rules of Criminal Procedure, in which he argued that his trial counsel had rendered ineffective assistance in the following ways:

1. Counsel failed to object to the admissibility of the testimony and report of the clinical and forensic psychologist, Dr. Doug McKeown, on grounds that Dr. McKeown had given Murphy a misleading confidentiality notification regarding whether his statements to Dr. McKeown could be used against him at trial.

2. Counsel failed to adequately cross-examine Dr. McKeown regarding the misleading confidentiality notification.

    3.      Counsel failed to present a defense of mental disease or defect when ample evidence suggested Murphy was suffering from a severe reaction to taking multiple medications, and despite such evidence, counsel pursued a defense of diminished capacity.

    4.      Counsel failed to coordinate the expected testimony from defense experts, which caused his defense to fail.

    5.      Counsel failed to call key witnesses to testify regarding Murphy's appearance and mental state on the day of the incident.

Doc. No. 11-30 at 12-44.

On November 13, 2013, the trial court held an evidentiary hearing on Murphy's Rule 32 claims. Doc. No. 11-30 at 76-181. On January 1, 2014, the trial court entered an order denying Murphy's Rule 32 petition, finding that Murphy failed to meet his burden of proving trial counsel's ineffectiveness. *Id*. at 57.

Murphy appealed, reasserting his claims regarding trial counsel's failure to object to Dr. McKeown's testimony and report on the basis of the allegedly misleading confidentiality notification that Dr. McKeown had given him. Doc. No. 11-31 at 19-25. In addition, Murphy pursued his claim that trial counsel was ineffective for failing to present a defense of mental disease or defect. *Id*. at 25-27. Murphy also pursued his claim that trial counsel was ineffective for failing to call witnesses to testify regarding his appearance and mental state on the day of the incident. *Id*. at 27-30.

On July 11, 2014, by unpublished memorandum opinion, the Alabama Court of Criminal Appeals affirmed the trial court's judgment denying Murphy's Rule 32 petition, holding that Murphy had failed to demonstrate ineffective assistance of counsel under the standards in *Strickland v. Washington*, 466 U.S. 668 (1984). Doc. No. 11-33. Murphy applied for rehearing, which was overruled. Doc. Nos. 11-34 and 11-35. He then petitioned the Alabama Supreme Court

for a writ of certiorari.  Doc. No. 11-36.  The petition for certiorari was denied on September 12, 2014, and a certificate of judgment was entered that same date.  Doc. No. 11-37.

Murphy, proceeding *pro se*, initiated this federal habeas action on January 5, 2015, by filing a § 2254 petition in which he claims that his trial counsel rendered ineffective assistance by failing to present a defense of mental disease or defect.  *See* Doc. No. 1 at 7; Doc. No. 1-1 at 1-3.

The respondents answer that Murphy's claim was properly adjudicated on the merits by the state courts and that he is not entitled to federal habeas relief.  Doc. No.11.  After careful review of the § 2254 petition, the parties' submissions, and the record in this case, the undersigned finds that Murphy's petition should be denied without an evidentiary hearing.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*.

## II.  DISCUSSION

### A.  Scope of Habeas Review for Claims Adjudicated on Merits by State Courts

"When it enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress significantly limited the circumstances under which a habeas petitioner may obtain relief."  *Hardy v. Allen*, 2010 WL 9447204, at *7 (N.D. Ala. Sep. 21, 2010).  To prevail on a § 2254 claim adjudicated on the merits by the state courts, a petitioner must show that a decision by the state courts was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts, in light of the evidence presented in the State court proceeding."  28 U.S.C. §2254(d)(1) & (2); *see Williams v. Taylor*, 529 U.S. 362, 404-05 & 412-13 (2000).

A state court's decision is "contrary to" federal law either if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts "materially

indistinguishable" from those in a controlling case, but nonetheless reaches a different result. *Williams*, 529 U.S. at 404-06; *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision is an "unreasonable application" of federal law if it either correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or it extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 407. "Objectively unreasonable" means something more than an "erroneous" or "incorrect" application of clearly established law, and a reviewing federal court may not substitute its judgment for the state court's even if the federal court, in its own independent judgment, disagrees with the state court's decision. *See Williams*, 529 U.S. at 411; *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003). The reviewing court "must determine what arguments or theories supported or ... could have supported[ ] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "This is a 'difficult to meet,' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 536 U.S. 170, 181 (2011) (internal citations omitted).

Federal courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.   *Strickland* Standard for Claims of Ineffective Assistance of Counsel**

*Strickland v. Washington*, 466 U.S. 668 (1984), sets forth the clearly established federal law on claims of ineffective assistance of counsel and requires that a petitioner alleging ineffective assistance establish that his counsel's performance was deficient and that he was actually prejudiced by the inadequate performance. 466 U.S. at 687. This requires showing both that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. The petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness," *id*. at 688, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

An ineffective assistance of counsel claim is examined under the "totality of the circumstances." *House v. Balkcom*, 725 F.2d 608, 615 (11th Cir.1984). An attorney's performance is presumed to have been reasonable and must not be examined with the aid of judicial hindsight. *Messer v. Kemp*, 760 F.2d 1080, 1088 (11th Cir. 1985). A federal court must apply a "heavy measure of deference to counsel's judgments." *Singleton v. Thigpen*, 847 F.2d 668, 670 (11th Cir. 1988) (quoting *Strickland*, 446 U.S. at 691).

C. **Murphy's Claim**

Murphy contends that his trial counsel rendered ineffective assistance by failing to present a defense of mental disease or defect and instead pursuing a defense of diminished capacity. *See* Doc. No. 1 at 7; Doc. No. 1-1 at 1-3. As he did in his Rule 32 petition, Murphy argues that, at arraignment, he pleaded not guilty by mental disease or defect because his actions in shooting up the clinic resulted from his adverse reactions to medications he had been prescribed and had ingested on the day of the incident. Doc. No. 1-1 at 1-3. He maintains that his trial counsel

6

improperly abandoned this theory shortly before trial because counsel believed there was insufficient evidence to satisfy the M'Naghten standard for an insanity defense.[2] According to Murphy, because there was ample evidence to show he had an adverse reaction to the medications he had taken, his trial counsel should have presented a mental defect defense to the jury.

The record show that, prior to Murphy's trial, the trial court ordered Dr. Doug McKeown, a clinical and forensic psychologist, to determine Murphy's mental state at the time of the offense. Doc. No. 11-14 at 2-3. Dr. McKeown reviewed numerous documents provided by the State and by Murphy and interviewed Murphy when making his determination on Murphy's mental state. *Id*. at 4-53. At trial, the State offered expert testimony from Dr. McKeown. Dr. McKeown testified:

> [I]t was my opinion that [Murphy] was capable of appreciating the nature and quality of his actions and behavior at that time; that the reports and information available were that he was taking different medications which could have had some type of an effect on him, but not to the point that it would have prevented him from carrying out purposeful behavior or knowing the difference between right and wrong.

---

[2] M'Naghten's Case, 8 Eng.Rep. 718 (1843). Under the "M'Naghten Rule," to be considered legally insane at the time of offense, the defendant, by reason of mental disease or defect, must have been unable to understand the nature of his act or its consequences, or incapable of distinguishing right from wrong. *See, e.g., Reese v. Wainwright*, 600 F.2d 1085, 1090 (5th Cir. 1979). Alabama's insanity defense statute, which is derived from the M'Naghten Rule, reads:

> It is an affirmative defense to a prosecution for any crime that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

§ 13A-3-1(a), Ala. Code 1975. *See, e.g., Ware v. State*, 584 So. 2d 939, 942-43 (Ala. Crim. App. 1991).

*Id*. at 53.  Dr. McKeown also testified that Murphy's actions during the police standoff, such as his negotiations with the police and his request for legal advice, suggested purposeful activity and the ability to reason – mental processes inconsistent with delirium or psychosis.  *Id*. at 57-58.

At trial, Murphy's counsel presented expert testimony of two expert witnesses as part of his defense.  Murphy's expert witnesses presented testimony that conflicted with that of the State's experts.  Dr. Michael D'Errico, a forensic psychologist, performed a psychological evaluation of Murphy, interviewed Murphy's brother and mother by telephone, and reviewed Murphy's medical records.  Doc. No. 11-18 at 52-64.  It was Dr. D'Errico's opinion that

> Mr. Murphy was experiencing side effects from a medication which caused him to vomit, feel nauseous, and become dehydrated, and his psychological – I mean his speech, his ability to orient himself to time, his ability to focus his attention, all of which were deteriorated at the time just prior to the offense, were representative of a substance-induced state of delirium.

*Id*. at 64-65.  Dr. D'Errico testified that these combined factors would have affected Murphy's decision-making and behavior.  *Id*. at 65.

Murphy's trial counsel also offered expert testimony from Dr. Brandi Odom, a doctor of pharmacy.  Dr. Odom provided information about the various prescription medications taken by Murphy and testified that "given the medications that [Murphy] was taking, and from the interviews that I had and the information that I gathered, in my opinion I think that Mr. Murphy experienced drug-induced psychosis or drug-induced central nervous system effects which contributed to his actions around the time of the alleged offense."  Doc. No. 11-18 at 163-64.

At the evidentiary hearing on Murphy's Rule 32 petition, Murphy's trial counsel, Matthew C. Lamere, testified that when he undertook Murphy's case, he learned about Murphy's medications and requested that Murphy undergo a mental examination.  Doc. No. 11-30 at 139, 143.  Before receiving the results of the mental examination, Lamere had Murphy enter a plea of

not guilty by reason of mental disease or defect. *Id*. at 139. However, Lamere testified, after speaking to Dr. McKeown and Dr. D'Errico about the results of their examinations of Murphy and learning from both that they were unwilling to testify that Murphy met the M'Naghten test, Lamere believed he lacked sufficient evidence to present a plausible defense of mental disease or defect. *Id*. at 139-42, 155. At that point, Lamere shifted his strategy to a defense of diminished capacity, based on the theory that Murphy could not form intent because of the drugs he had taken before the offense. *Id*. at 140, 148, 155. Lamere also testified that Murphy wrote him a letter prior to trial, and although there were indications that Murphy was suffering from side effects of the medications, Murphy specifically detailed the events that occurred during the incident, which indicated to Lamere that Murphy was aware of what was going on and what he was doing during the offense. *Id*. at 147-48. Lamere testified that because he did not have an expert willing to testify to support a defense of mental disease or defect, and because the physical evidence and expected testimony better fit the defense of diminished capacity, he used the diminished-capacity defense as his trial strategy. *Id.* at 143-45, 148-49.

In its memorandum opinion affirming the trial court's denial of Murphy's Rule 32 petition, the Alabama Court of Criminal Appeals held:

> Here, after reviewing the findings of the expert opinions as well as the physical evidence and his own interactions with Murphy, trial counsel made a reasonable tactical decision to proceed with a theory of diminished capacity defense instead of a defense of not guilty by reason of mental disease or defect. Although counsel chose not to pursue an insanity defense theory, counsel was still able to offer the expert testimony of Dr. D'Errico and Dr. Odom to establish that Murphy was experiencing side effects of the medication; therefore, his actions were representative of a substance-induced state of delirium or psychosis, which may have contributed to his actions at the time of the offense. Counsel was able to clearly articulate his reasons for choosing his theory of defense that he felt would be most successful for his client. Thus, Murphy has failed to meet his burden of proof under *Strickland v. Washington*, 466 U.S. 668 (1984), to support his claim that his trial counsel was ineffective for failing to pursue a defense of not guilty by reason of mental disease or defect.

9

Doc. No. 11-33 at 15.

This court has noted:

[I]t is important to distinguish between two kinds of mental-health-related defenses: (1) the insanity defense, and (2) the defense of diminished mental capacity. The insanity defense is an *affirmative defense* as that term is traditionally understood in the criminal law. It presupposes that the government can prove the elements of the offense beyond a reasonable doubt, but it then affirmatively excuses the defendant's otherwise criminal behavior. The defendant's conduct is said to have met all the elements of the offense, but on account of a mental disease or defect the defendant is relieved of responsibility for it….

The defense of diminished mental capacity, in contrast, is not an affirmative defense at all, but rather a *defense theory* that challenges the government's ability to prove a necessary element – specifically, the *mens rea* element – of the offense. Where the law requires that a defendant have a mental state of 'specific intent' in order to be guilty of the offense, evidence that the defendant suffered from diminished mental capacity at the time of the offense, if believed by the factfinder, serves to negate the *mens rea* element of the crime. If successful, the diminished-mental-capacity approach defeats the government's effort to prove every element of the offense beyond a reasonable doubt, by demonstrating that the defendant did not, at the time of the offense, have the specific intent required to commit the crime.

The Eleventh Circuit has recognized this distinction and has summarized it as follows: "'Affirmative defense' evidence of mental impairment, when specifically recognized and defined by the legislature, must be raised by the defendant and can 'justify' or 'excuse' conduct that is otherwise criminal." *United States v. Cameron*, 907 F.2d 1051, 1063 (11th Cir. 1990) (internal citation omitted). "Psychological evidence that aids the trier in determining the defendant's specific state of mind with regard to the actions she took at the time the charged offense was committed, by contrast," the court added, "is not an affirmative defense but is evidence that goes specifically to whether the prosecution has carried its burden of proving each essential element of the crime – at least when specific intent is at issue." *Id*.

*United States v. Lawson*, 459 F. Supp. 2d 1192, 1195–96 (M.D. Ala. 2006) (emphasis in original).

Strategic choices of counsel made after thorough investigation of the law and facts relevant to plausible options are "virtually unchallengeable." *Strickland*, 466 U.S. at 690. "Even if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v.*

10

*Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983). *See also, e.g., Dingle v. Secretary for Dept. of Corrections*, 480 F.3d 1092, 1099 (11th Cir. 2007).

> [A] court must not second-guess counsel's strategy. *Waters [v. Thomas]*, 46 F.3d [1506,] at 1518-19 [(11th Cir. 1995)] (en banc). By "strategy," we mean no more than this concept: trial counsel's course of conduct, that was neither directly prohibited by law nor directly required by law, for obtaining a favorable result for his client. For example, calling some witnesses and not others is "the epitome of a strategic decision." *Id*. at 1512 (en banc); *see also id*. at 1518-19 (en banc); *Felker v. Thomas*, 52 F.3d 907, 912 (11th Cir. 1995) (whether to pursue residual doubt or another defense is strategy left to counsel, which court must not second-guess); *Stanley v. Zant*, 697 F.2d 955, 964 (11th Cir. 1983) (stating that reliance on line of defense to exclusion of others is matter of strategy).

*Chandler v. United States,* 218 F.3d 1305, 1314 n.14 (11th Cir. 2000).

Here, the decision by trial counsel Lamere to eschew a mental-disease-or-defect defense – and instead to pursue a defense of diminished capacity stemming from the effects of medication, which challenged the State's ability to prove Murphy's specific intent to commit the crimes – fell within the wide range of reasonable professional assistance. This strategy choice was not "so patently unreasonable" that no competent lawyer would have chosen it. *Adams*, 709 F.2d at 1145. The defense's experts, and the State's expert Dr. McKeown, testified extensively about the effects of the medications Murphy had been prescribed and on their effect on Murphy's ability to control his actions. The jury could consider this evidence when determining whether Murphy had the specific intent to kill his victims, a required element of attempted murder, the most serious crime Murphy was charged with. Lamere's testimony at the Rule 32 hearing established that he talked to Dr. McKeown and Dr. D'Errico after they conducted separate mental examinations of Murphy and was told by both that they could not testify Murphy met the M'Naghten test. It was not unreasonable for counsel to pursue a diminished-capacity defense when, after conducting a thorough investigation of the law and facts, he did not have an expert willing to testify in support of a mental-disease-or-defect defense. Lamere's investigative conclusions were consistent with

11

the relevant expert opinions available at the time he made his strategic decision to not pursue a mental-disease-or-defect defense.

Because the state court ruled on the merits of Murphy's ineffective-assistance-of-counsel claim, this court's § 2254 review under *Strickland* is another step removed from the original analysis, or as the Supreme Court puts it, "doubly deferential." *Burt v. Titlow*, ___ U.S. ___, ___, 134 S.Ct. 10, 13 (2013) (quotation marks and citation omitted); *see Tanzi v. Sec'y, Florida Dep't of Corr.*, 772 F.3d 644, 652 (11th Cir. 2014) (quoting *Burt*). Here, the state court correctly identified *Strickland* as the controlling law and properly applied it to Murphy's ineffective-assistance-of-counsel claim. The state court decision was neither contrary to nor an unreasonable application of clearly established federal law, and it did not involve an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1) & (2). Consequently, Murphy is not entitled to federal habeas relief.

### III.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the petition for writ of habeas corpus under 28 U.S.C. § 2254 be DENIED and this case be DISMISSED with prejudice.

The Clerk of the Court is DIRECTED to file the Recommendation of the Magistrate Judge and to serve a copy on the petitioner. The petitioner is DIRECTED to file any objections to this Recommendation on or before March 6, 2017. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the petitioner objects. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc*., 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 13th day of February, 2017.


   /s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE